UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14CR00321 HEA (JMB) |
| ) | |
| CEDRIC MILLER, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S SUPPLEMENT TO MOTION TO COMPEL DEFENDANT CEDRIC MILLER TO PROVIDE A SALIVA SAMPLE FOR DNA ANALYSIS**

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Dean R. Hoag and Michael A. Reilly, Assistant United States Attorneys for said District, and for its Supplement to its previous Motion to Compel Defendant Cedric Miller to Provide Saliva Sample for DNA Analysis, and states as follows:

**I.  INTRODUCTION**

On October 30, 2014, the Government filed its Motion to Compel Defendant Cedric Miller to Provide Saliva Sample for DNA Analysis, which was supported by the Affidavit of Postal Inspector Daryl Isaac ("Government's Motion").  Doc. # 23.  On November 12, 2014, Defendant filed his Objection to Government's Motion for Production of DNA Samples ("Defendant's Objection").  Doc. # 37.  On May 27, 2015, the Court conducted a status conference and granted the Government the opportunity to supplement its Motion, and thereafter,

1

Defendant the opportunity to respond to the Government's supplement.  Doc. # 84.  The Government incorporates by reference herein its original Motion, Doc. #. 23.

The Government has consulted with the DNA analyst from the St. Louis Metropolitan Police Department ("SLMPD") Crime Laboratory.  The DNA analyst has confirmed that there is too little DNA present from the trace contributor to the DNA materials developed from the hat seized at the exterior of the crime scene to make a conclusive determination as to the source of the DNA as to the trace contributor.  The DNA analyst has also advised counsel for the Government that standard laboratory protocol in a case such as this is to obtain a DNA sample from any person known to be at the crime scene for purposes of eliminating that person, in this case Defendant Miller, as a contributor to the DNA profile obtained from the hat seized at the exterior of the crime scene.

Accordingly, the Government maintains that there is probable cause to believe that Defendant Miller's DNA profile is relevant to the investigation and may reveal relevant evidence of whether Defendant may be eliminated or excluded, even if his full DNA profile may not be positively identified.  Relevant but distinct scientific findings include both identification and exclusion.

The Government proposes that a trained law enforcement investigator or evidence technician obtain Buccal swabs from Defendant's mouth in accord with standard procedure.  This should be done in the presence of Defendant's counsel, at the United States Marshal's Office in the Eagleton Courthouse, at a mutually convenient time for Defense Counsel and the investigator or evidence technician.

Alternatively, Defendant's objection, if sustained, would preclude the SLMPD DNA analyst from completing what would be considered a standard and complete DNA analysis in accord with its standard procedure. Therefore, in the event the Court sustains Defendant's Objection, the Government requests that the Magistrate Court or District Court enter its order to preclude Defendant Miller from asserting or arguing at trial that the Government failed to obtain Defendant's DNA profile or conduct elimination analysis when Defendant himself objects to this non-invasive and well accepted forensic procedure. Defendant should also be barred from arguing that he is excluded.

## II.  DISCUSSION

**A.     There is Probable Cause to Believe Defendant Miller's DNA Profile is Relevant**

There is probable cause to believe Defendant committed the crimes charged in the indictment. See Redacted Indictment, Doc. # 2. Moreover, the evidence set forth in the Affidavit establishes not only probable cause to believe Defendant committed the crimes, but that he was present at the crime scene, where the hat containing DNA material was recovered. See Doc. # 23-1, including paragraphs 15, 17-20, 24, including footnote 7, 35-48. Defendant's DNA profile is relevant because it will provide evidence that may or may not exclude him as a contributor to the DNA material, which is a relevant scientific finding.

Rule 41 of the Federal Rules of Criminal procedure states that "After receiving an affidavit … a magistrate judge must issue the warrant if there is probable cause ..." Fed R. Crim. P. 41(d)(1). Probable cause means a "fair probability that … evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause

3

is thus concerned only with probabilities, not certainties. *See Gates*, 462 U.S. at 232; *See also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009) (stating "Perhaps the best that can be said generally about the required knowledge component of probable cause for a …search is that it raise a 'fair probability' of discovering evidence of criminal activity") (*quoting Gates*, 462 U.S., at 238); *United States v. Coleman,* 349 F.3d 1077, 1093 (8th Cir. 2003) (holding that "there must be a fair probability … that *evidence* of a crime will be found.") (emphasis added).

Furthermore, "the officer's supporting affidavit must make it apparent that there is some nexus between the items to be seized and the criminal activity being investigated." *Kohler v. Englade* 470 F.3d 1104, 1109 (5th Cir. 2006) (referencing *Warden v. Hayden*, 387 U.S. 294, 302 (1967)). Therefore, in order for a warrant to be issued, there needs to be both probable cause to believe that a crime has been committed, and probable cause that evidence of that crime will be found where the warrant directs the search.

The Grand Jury findings in this case support the existence of probable cause related to a broad spectrum of criminal activity committed by Defendant and charged in the following counts:

(1) A drug trafficking conspiracy in violation of Title 18, U.S.C., section 846;

(2) Possession of a firearm in furtherance of the drug trafficking conspiracy on April 27, 2012, in violation of Title 18, U.S.C., Section 924(c);

(3) Causing the death of Mark Wells, Jr., with a firearm in furtherance of the drug trafficking conspiracy charged in Count 1, in violation of Title 18, U.S.C., Sections 2 and 924(c)(1)(A);

4

(4) Killing Mark Wells, Jr., in retaliation for giving information to a law enforcement officer, in violation of Title 18, U.S.C., Sections 2 and 1513(a)(1)(B); and

(5) Causing the death of Mark Wells, Jr., with a firearm in furtherance of the crime of violence charged in Count 4, in violation of Title 18, U.S.C., Sections 2 and 924(c)(1)(A);

In *United States v. Garcia*, the court held, in part, that the indictment provided sufficient probable cause that defendants were involved in drug trafficking. *United States v. Garcia*, 27 F.3d 1009, 1014 (4th Cir. 1994). Nonetheless, the search warrant affidavit needed to show the nexus linking the crime to the defendant's house, where they were planning on searching. *Id* at 1013, *citing United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982). Here, the indictment provides probable cause to conclude that Defendant Miller was engaged in the criminal conduct as charged in the first five counts of the indictment. The facts alleged in the Affidavit establish Defendant's presence at the crime scene, and establish probable cause to support the Government's motion to obtain a Buccal swab to complete the DNA analysis in this case.

Defendant's presence and nexus to the crime scene support a finding of sufficient probable cause to compel a production of a DNA sample. *See U.S. V. Grinnage,* 486 Fed.Appx. 325, 327 (3rd Cir. 2012); *United States v. Lassiter*, 607 F. Supp. 2d 162, 164 (D.D.C. 2009).

The affidavit establishes Defendant's involvement in drug trafficking, including his previous conspiratorial relationship with Mark Wells, Jr. *See* paragraphs 5-13, related to the marihuana conspiracy. The ballistic evidence and witness accounts establish the presence of two shooters, one of whom had a .223 caliber firearm and the other a .45 caliber firearm. *See* paragraphs 4, 14-16, and 17-34.

The evidence firmly establishes Defendant's presence at the crime scene. Witness #1

5

heard statements from Subject # 1 (that he "lost eighteen racks" and that he "got three years paper for that"), which establish Defendant Miller's presence at the scene. *See* paragraphs 10 and 13, setting forth the seizure of $18,000.00 and a resulting term of three years of probation for the offense of money laundering in the second degree. Defendant also admitted his participation in the homicide, and his presence at the crime scene. *See* paragraphs 42-47. The witness to whom Defendant Miller admitted his involvement has been corroborated by the surrounding investigation, as set forth in the affidavit. Moreover, the totality of the evidence establishes the probative value of Defendant Miller's self-incriminating statement to the witness. *See U.S. v. Greenburg,* 410 F.3d 63, 67-68 (1st Cir. 2005) (stating that "when a self-incriminating statement is provided by an informant whose identity is known to the authorities, the statement is more likely to be true").

A red hat, was worn by one of the shooters, and recovered from the exterior scene. *See* paragraphs 15 and 24. The DNA evidence was developed from this hat.

In summary, there is probable cause to believe Defendant committed criminal offenses as charged in the indictment, and a quantum evidence quite beyond probable cause that places him at the crime scene, where the hat containing the DNA materials was recovered. There is probable cause to believe Defendant's DNA profile contains evidence related to the crime, which may, or may not, exclude him as a contributor to the DNA profile, which would constitute a relevant scientific finding in this proceeding.

**B.    The Buccal Swab Procedure Constitutes a Reasonable Search**

The Government proposes that a trained law enforcement professional obtain a buccal swab from Defendant Miller, in this building, in the presence of Defendant's Counsel. This

procedure is minimally invasive and highly accurate.

Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests" *Samson v. California*, 547 U.S. 843, 848 (2006). In determining an individual's privacy interests during 'invasive' procedures, the court also considers (1) the extent to which the procedure may threaten the safety or health of the individual, and (2) the extent of intrusion upon the individual's dignitary interest in…bodily integrity. *See Winston v. Lee*, 470 U.S. 753, 761 (1985). The court then weighs these factors against the community's interest in fairly and accurately determining guilt or innocence. *Id.* Because the Buccal Swab test is minimally invasive, highly accurate, and presents no risk of harm to Defendant Miller, and because Defendant Miller is already being detained for the murder of Mark Wells Jr., compelling him to conform to a buccal swab test is reasonable under the Fourth Amendment.

An individual can be compelled to give a blood sample where doing so would help the Government prove his guilt or innocence. *See Schmerber v. California*, 384 U.S. 757, 769 (1966).  The court held that the government had a great interest in determining guilt and innocence of those charged with crimes, and a blood test is a "highly effective means of determining the degree to which a person is under the effect of alcohol. *Id.* at 770. The Court also found that the blood draw itself "involves virtually no risk, trauma, or pain" and is performed in a safe, professional environment. *Id.* at 771.  The court came to the conclusion that the defendant's Fourth Amendment rights were not violated as the government's interest in determining the defendant's guilt or innocence outweighed the defendant's interest in not having

7

a safe, minimally invasive surgery performed on him in a professional environment. *Id*.

By contrast, it is not reasonable under the Fourth Amendment to require an alleged criminal to undergo extensive surgery to retrieve possible evidence when that surgery exposes the alleged criminal to risks of harm, and the government already possesses compelling evidence that the defendant committed the crime in question. *See Winston v. Lee*, 470 U.S. 753, 755 (1985).

Although arising in a context different from the present case, using a Buccal swab during booking procedures upon a person's arrest is reasonable under the Fourth Amendment for purposes of identification. In *Maryland v. King*, King was charged with first and second degree assault for menacing a group of people with a firearm. *See Maryland v. King*, 133 S. Ct. 1958, 1965 (2013). King underwent a buccal swab test when he was brought into the police station, in conformance with state law. The DNA test led the police to identify King as the perpetrator in a 6 year old, unsolved rape charge. *Id.* King challenged the buccal swab test, but the court found that it was reasonable given the strong government interests and minimal invasiveness of the test. The court held that the Buccal swab test was "highly accurate" and that the intrusion it caused was "negligible." *Id* at 1966 and 69. Furthermore the court held that the Government possessed a significant interest in properly identifying the persons whom they arrested. *Id* at 1980. The court held that it was paramount that the police be able to connect the defendant with his public persona and to reveal his violent past so that they are better equipped to process him correctly. *Id.* at 1972.

Additionally, the buccal swab test sought after in this case is even less intrusive than the blood test used in *Schmerber,* and it is certainly safer and far less intrusive than the operation

8

suggested in *Winston*. "A buccal swab is a far more gentle process than a venipuncture to draw blood. It involves but a light touch on the inside of the cheek … it requires no "surgical intrusions beneath the skin." *Id* at 1969. The gentle rub of the cheek means that no skin is broken when the test is being performed. It is thus a briefer and even less intrusive procedure than the test used in *Schmerber*, and it involves "virtually no risk, trauma, or pain" *Id.* at 1979 (quoting *Schmerber*, 384 U.S., at 771). "The fact that [this] intrusion is negligible is of central relevance to determining reasonableness." *Id.* at 1970.

Like the blood test used in the *Schmerber* case, the Buccal swab test is an incredibly accurate tool in determining a person's guilt or innocence. *See Id.*, at 1966 (acknowledging DNA testing's "unparalleled ability both to exonerate the wrongly convicted and to identify the guilty). The procedure the Government proposes is commonly used, minimally invasive, well-accepted, and Defendant's Counsel would be present.

Alternatively, in the event the Court sustains Defendant's Objection, the Government requests that the Magistrate Court or District Court enter its order to preclude Defendant Miller from asserting or arguing at trial that the Government failed to obtain Defendant's DNA profile or conduct elimination analysis when Defendant himself objects to this non-invasive and well accepted forensic procedure.  Defendant should also be barred from arguing or asserting that he was excluded when he prevents the very procedure by which he may be scientifically excluded as a contributor.

### III.  CONCLUSION

WHEREFORE, the Government requests this Court issue an order or warrant directing the submission of a saliva sample from defendant Cedric Miller for comparative DNA analysis. Alternatively, should the Court sustain Defendant's objection, the Government requests that he Court enter its order barring Defendant Miller from asserting or arguing at trial that the Government failed to obtain Defendant's DNA profile or conduct elimination analysis when Defendant himself objects to this non-invasive and well accepted forensic procedure

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

 s/ *Michael A. Reilly*
MICHAEL A. REILLY, #43908MO
DEAN R. HOAG, #23843MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
(314) 539-6895

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 5, 2015, the foregoing motion and redacted affidavit was filed under seal electronically with the Clerk of the Court, and that, upon the retaining/appointment of an attorney as to defendant Miller, a copy of said motion and affidavit will be provided to the designated defense counsel.

                                        *s/ Michael A. Reilly*
                                        MICHAEL A. REILLY, #43908MO
                                        DEAN R. HOAG, #23843MO
                                        Assistant United States Attorney