UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CR00321 HEA (JMB) |
| | ) | |
| CEDRIC MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT MILLER'S PRE-TRIAL MOTIONS**

COMES NOW the United States of America by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Dean R. Hoag, Assistant United States Attorney for said District, and responds to defendant Miller's pre-trial motions as follows:

**I.   FACTS**

In July of 2012, the St. Louis Postal Inspectors Office began investigation of a marijuana drug trafficking organization operating between St. Louis, Missouri and Tucson, Arizona. The investigation detailed forty-five mailings between St. Louis and Tucson, Arizona involving Mr. Mark Wells at various addresses in the St. Louis area and Cedric Miller at 9706 E. 2nd Street, Tucson, Arizona 85748.

On July 16, 2012, St. Louis Postal authorities pulled Express Mail Parcel EI014488067US from the mail. The parcel was addressed to Camille Miller, 9706 E. 2nd Street, Tucson, Arizona 85748. The parcel was excessively taped, addressed person-to-person, the Express Mail label was handwritten, and the parcel was addressed to a source narcotic city

(Tucson). The sender address and addressee name were fictitious. A narcotics trained canine alerted to the presence of narcotics. Judge David D. Noce then issued a search warrant for the package and it contained $16,000 in U.S. currency.

On July 17, 2012, Postal authorities in Tucson, Arizona conducted a controlled delivery of Express Mail Parcel EI014488067US to Cedric Miller, the defendant in this case. A subsequent trash pull from Miller's Tucson Address resulted in the recovery of items associated with packaging and shipment of marijuana: marijuana "shake," empty U-Haul bags, Styrofoam packing peanuts and space-saver vacuum storage bags.

On August 31, 2012 Express Mail Parcel EI209239195US was mailed from Tucson, Arizona to Carla Williams at 3105 Thelma Ave., St. Louis, Missouri, 63121. Inspectors compared video of the sender to a photograph of Randall Taylor and they appeared to depict the same person. The characteristics of this package were similar to previous packages associated with this investigation which contained narcotics or their proceeds: handwritten Express Mail label; addressed person-to-person; fictitious sender address; fictitious addressee name; and originated from a known source narcotic city. The inspectors conducted a controlled delivery of the parcel. Shortly after the parcel was delivered, inspectors observed Mark Wells take possession of the parcel.

On September 7, 2012, Express Mail Parcel EI014491123US was mailed from the Jordan W. Chambers Post Office (Chambers PO). Investigators conducted surveillance at the Chambers PO and identified Mark Wells as the mailer of the parcel. The package was addressed to Camille Miller, 9706 E. 2nd St., Tucson, Arizona 85748. The sender address was fictitious. Express Mail Parcel EI014491123US was similar (nearly identical in size, weight, handwriting, and addresses) to Express Mail Parcel EI014488067US (the parcel delivered on July 17, 2012 that contained

2

$16,000 in U.S. currency.) The inspectors conducted a controlled delivery of the parcel. Cedric Y. Miller II accepted the parcel and stated that the parcel was for his baby daughter.

On September 11, 2012, St. Louis Postal inspectors observed two Express Mail Parcels associated to their Tucson, AZ drug trafficking investigation: Express Mail Parcel EI380160404US and Express Mail Parcel EG935163661US. The inspectors reviewed the Express Mail labels of both parcels and related the addresses listed on those parcels to previously used addresses associated with this investigation.

Express Mail Parcel EI380160404US had a fictitious sender address. The parcel was addressed to George Pierce, 400 S. Harvey, St. Louis, MO 63135. A database search revealed that "George Pierce" was not a name associated with that address. Mail Parcel EG935163661US was addressed from Antwan Mackins, 4011 N 1st Ave #F42, Tucson, AZ 85719 and addressed to Julie Banks, 12054 El Camara, Florissant, MO 63033. The sender and addressee names were both fictitious names not associated with those addresses. Both parcels had heavily taped seams, were addressed person-to-person, and had handwritten Express Mail label. Based on these characteristics, inspectors requested canine review of both parcels.

On September 11, 2012, Express Mail Parcel EI380160404US and Express Mail Parcel EG935163661US were placed in two separate areas not known to have been contaminated by a narcotic odor. Saint Louis County Police Department K-9 Officer Joseph Brand had his narcotics trained K-9 "Emma" search these areas individually. Officer Brandt advised that Emma reacted in a positive manner to both parcels, indicating the presence of a narcotic odor.

On September 11, 2012, the facts regarding Parcel EI380160404US and Parcel EG935163661US were presented to the Honorable U.S. Magistrate Frederick R. Buckles, EDMO. Judge Buckles issued federal search warrants 4:12MJ3163 for Parcel EI380160404US

and 4:12MJ3162 for Parcel EG935163661US. Inspectors executed the search warrants. Parcel EI380160404US contained ten individually wrapped bags of field tested marijuana, weighing fourteen pounds. Parcel EG935163661US contained ten individually wrapped bags of field tested marijuana, weighing fourteen pounds.

On September 12, 2012, St. Louis Postal Inspectors John Jackman and Joseph Widlowski, along with the St. Louis County Drug Team, traveled to 2801 Samuel Shepard Drive, St. Louis, MO 63103 to interview Mark Wells regarding his involvement in the marijuana drug trafficking organization operating between St. Louis and Tucson. Inspectors knocked on the door and Mark Wells exited the residence. Inspectors noted the smell of marijuana emanating from inside the residence. The inspectors identified themselves as federal law enforcement officers and informed Wells they intended to get a search warrant to search his residence. The inspectors had probable cause to search Wells' residence due to the smell of marijuana coming from the residence and the September 7, 2012 video surveillance of Wells mailing Express Mail Parcel EI014491123US of suspected narcotics proceeds. Further, the inspectors suspected Wells of mailing Express Mail Parcel EI014488067US which contained $16,000 in U.S. currency.

Wells agreed to provide written consent to search his residence and completed an IS Form 8193 Consent to Search for 2801 Samuel Shepard, St. Louis, MO. The inspectors and officers from the St. Louis County Drug Team searched 2801 Samuel Shepard and recovered the following: USPS Express Mail labels and receipts; a loaded .357 Magnum handgun and two boxes of .357 Magnum cartridges; two one-gallon Ziploc bags filled with marijuana; four individually wrapped bags of marijuana; U.S. currency found inside the residence and on Wells' person totaling $3,456; drug paraphernalia and other items associated with the packaging and

shipment of marijuana, including a burnt marijuana cigarette, a vacuum sealer, packaging materials, a scale, and heat sealer.

Wells also provided the inspectors with written consent to search his vehicle. Inside Well's vehicle the inspectors recovered a USPS Express Mail receipt for the mailing of Express Mail Parcel EI014491123US. Tucson Postal Inspectors conducted a controlled delivery of that parcel on September 10, 2012. Inspectors suspected that the parcel contained narcotics proceeds because it was nearly identical in size, weight, and handwriting to Parcel EIO14488067US, which contained $16,000 in U.S. currency. Parcel EIO14488067US weighed two pounds and ten ounces. Parcel EI014491123US weighed two pounds and twelve ounces.

While on the scene and waiting to be transported, and without inspectors questioning him, Wells told inspectors that he received his marijuana through the mail from Cedric Miller.

On September 12, 2012, Tucson Postal Inspector Stephen Fay obtained a search warrant for 9706 E. 2nd Street Tucson, AZ 85748. The warrant was based on the previous controlled deliveries of a parcel containing narcotics proceeds (Parcel EI014488067US) and a parcel containing suspected narcotics proceeds (EI014491123US), and based on the July 2012 trash pull from 9706 E. 2nd Street, Tucson, AZ, which contained drug paraphernalia and other materials used to ship and transport narcotics.

At 5:30 PM on September 12, 2012, Tucson SWAT made entry into Miller's residence. Agents searched the residence and seized the following items: $17,558 in U.S. currency from a safe inside Miller's bedroom; $1,000 in U.S. currency from Miller's person; three firearms; small quantities of marijuana; a small amount of cocaine; marijuana smoking paraphernalia; packing materials; two cell phones; and blank Express and Priority Mail labels. Miller was arrested for money laundering in connection with drug trafficking.

5

On September 12, 2012, Miller was transported to the Tucson Police Department and interviewed by Inspector Fay. Before interviewing Miller, inspector Fay admonished Miller with his Miranda Rights. Miller agreed to speak with inspectors without an attorney. Miller told inspectors he was not involved in marijuana trafficking and that they money found in his home was from a settlement with a relative. Miller stated that he smoked marijuana and that the white powder found at his home was for personal use. Miller refused to identify the white powder, but it later tested to be cocaine. Fay stopped the interview and then re-started the interview and asked Miller specific questions about the money parcels he received. Inspector Fay asked Miller if he knew Mark Wells and Miller said no and declined to continue answering questions.

Inspectors seized two cell phones from 9706 E. 2nd Street Tucson, AZ 85748: an HTC cell phone (mobile #1) and an iPhone (mobile #2). Inspectors applied for search warrants to search the cell phones. Both warrants were issued and the phones were sent to the USPIS Computer Forensic Office at 1106 Walnut Street, St. Louis, MO 63199 for computer analysis.

Inspectors received an analysis report for mobile #1. It contained several messages referencing Express Mail tracking numbers and addresses that the St. Louis Postal Inspectors had previously suspected of receiving marijuana or narcotics proceeds. There were also several references to U.S. currency that was sent through U.S. mail. Forensic analysis determined that mobile #2 was locked and could not be analyzed. Inspectors obtained a signed 2703(c) court order requesting Apple Inc.'s assistance to unlock mobile #2 and sent it to Apple. As of July 1, 2014 Apple reported that there is a six-month delay in processing law-enforcement requests to assist in unlocking iPhones.

On October 14, 2012, Cedric Miller was interviewed by Postal Inspectors. The defendant signed a warning and waiver form for the interview and denied involvement in the mailing of marijuana from Arizona to St. Louis, Missouri.

On November 21, 2012 Mark Wells signed a proffer and was interviewed at the U.S. Attorney's Office by Postal Inspector Jackman and AUSA John T. Davis. Wells stated he received and distributed marijuana from Cedric Y. Miller II since December 2011. Wells stated Miller shipped marijuana to him using Priority or Express mail. Wells stated that he had received approximately twenty parcels through the mail from Miller, each containing about twenty pounds of marijuana. Wells stated that he had mailed ten parcels containing narcotics proceeds to Miller since January 2012. Wells identified the following addresses as locations where he had Miller send him marijuana:

- 1920 New Jamestown Road, St. Louis, MO 63138
- 11971 Jerries Lane, Florissant, MO 63033
- 2028 Sun Valley Drive, St. Louis, MO 63121
- 3105 Thelma Drive, St. Louis, MO 63121

On February 26, 2014, at the Federal Courthouse in St. Louis, Ronessa Clower viewed four photo line-ups. The photo arrays contained photos of Miller, Johnnie Moore, and Ocie Echols. Two of these photo arrays contained photos of Miller, one with short hair and one with dreadlocks. Ms. Clower did not identify any individual as a suspect. On March 12, 2014, Ms. Clower again viewed the photo line-up containing the photo of Miller with short hair. Again, she did not identify any suspect.

On March 10, 2014, Tresha Townsend viewed three of the four arrays that were shown to Ms. Clower on February 26, 2014. Ms. Townsend identified Mr. Moore and indicated the photo

of Miller looked vaguely familiar, except that the suspect didn't have dreadlocks. On March 21, 2014 Ms. Townsend was shown another photo array, this time containing the photo of Miller with short hair. Ms. Townsend was unable to identify any of the individuals pictured in that line-up.

## II.     RESPONSES

### A.     Motion to Sever for Separate Trial [Doc #132]

Co-defendant Moore has agreed to cooperate rendering this motion moot.

### B.     Motion to Suppress Statements [Doc #133]

On September 12, 2012 and October 14, 2012, the defendant, Cedric Miller, voluntarily made statements to a government agent. At the time of these statements, the defendant was in custody and had been properly advised pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), that: 1) the defendant had the right to remain silent; 2) anything the defendant said could be used against the defendant in court; 3) the defendant had the right to talk to a lawyer for advice before any questions were asked, and that the lawyer could be with the defendant during questioning; 4) if the defendant could not afford a lawyer, one would be appointed for the defendant before any questioning; and 5) even if the defendant decided to answer questions now without a lawyer present, the defendant still had the right to stop answering questions at any time. Defendant knowingly and intelligently waived those rights, thus making the statements admissible in trial. Miranda, supra at 478; Tucker v. United States, 375 F.2d 363, 366 (8th Cir.), cert. denied, 389 U.S. 888 (1967). At the hearing into this matter, the government will present evidence which will show that the defendant had been advised of these rights and had knowingly waived those rights, as well as proof on any other matters requiring evidence.

C.   **Motion to Suppress Physical Evidence [Doc #135]**

On September 12, 2012, a search was conducted of 9706 E. 2nd Street, Tucson, AZ 85748, pursuant to a search warrant issued by the Honorable U.S. Magistrate Judge Leslie A. Bowman on September 12, 2012 (federal search warrant 12-04927M). A copy of the search warrant and affidavit are attached. The government contends that the search warrant and affidavit provide sufficient probable cause to make the items seized admissible in trial.

The government will show in the hearing that all of the items seized during the search were properly seized and are admissible because they were listed in the search warrant as property to be seized. Even if the items were not listed in the search warrant, they would still be admissible because they were found during the search in a place which the authorities had a legal right to search pursuant to the warrant. Abel v. United States, 362 U.S. 217 (1960); United States v. Clark, 531 F.2d 928 (8th Cir. 1976).

On September 12, 2012, during the arrest of Cedric Miller, law enforcement officers seized $1,000 in U.S. currency from Cedric Miller's person. Law-enforcement officers making a valid custodial arrest are entitled to conduct a warrantless search of the suspect as well as the area from within which the suspect might obtain a weapon or destroy evidence. Chimel v. California, 395 U.S. 752 (1969). At the hearing into this matter, the government will present evidence which will show that the evidence was seized pursuant to a lawful arrest, as well as proof on any other matter requiring evidence.

On September 12, 2012, a search was conducted of an HTC cell phone seized from 9706 E. 2nd Street, pursuant to a search warrant issued by the Honorable U.S. Magistrate Judge David D. Noce, EDMO on February 24, 2014 (federal search warrant 4:14MJ00041 DDN). A copy of

the search warrant and affidavit are attached. The government contends that the search warrant and affidavit provide sufficient probable cause to make the items and data seized admissible in trial.

On September 12, 2012, a search was conducted of an iPhone cell phone seized from 9706 E. 2nd Street, pursuant to a search warrant issued by the Honorable U.S. Magistrate Judge David D. Noce, EDMO on February 24, 2014 (federal search warrant 4:14MJ00040 DDN). A copy of the search warrant and affidavit are attached. The government contends that the search warrant and affidavit provide sufficient probable cause to make the items and data seized admissible in trial.

The Fourth Amendment requires that a neutral and detached magistrate make a determination whether law-enforcement officers have probable cause to conduct a search. Warden v. Hayden, 387 U.S. 294, 301–02. (1967). Probable cause is the level of suspicion required to justify certain governmental intrusions upon interests protected by the Fourth Amendment. Wong Sun v. United States, 371 U.S. 471, 479 (1963). The determination of probable cause is made by a "totality of the circumstances" review. Illinois v. Gates, 462 U.S. 213, 238 (1983). In the context of a search, probable cause is defined as a "fair probability that the contraband or evidence of a crime will be found in a particular place." Id. The reviewing magistrate is to consider the facts in a practical common sense manner. The evidence must provide the magistrate with a "substantial basis" for his findings. Gates, 462 U.S. at 238–39.

At the hearing into this matter, the government will present evidence which will show that the evidence was seized pursuant to a valid search warrant, as well as proof on any other matter requiring evidence.

**D.     Motion to Suppress Search and Seizure of Postal Packages [Doc #134]**

On July 16, 2012, a search was conducted of Express Mail Parcel EI014488067US, pursuant to a search warrant issued by the Honorable U.S. Magistrate Judge David D. Noce, EDMO on July 16, 2012 (federal search warrant 4:12MJ00224 DDN). A copy of the search warrant and affidavit are attached. On September 11, 2012, searches were conducted of Express Mail Parcel EI380160404US and Express Mail Parcel EG935163661US, pursuant to search warrants issued by the Honorable U.S. Magistrate Judge Frederick R. Buckles, EDMO on September 11, 2012 (Federal search warrants 4:12MJ3163 and 4:12MJ3162). A copy of the search warrants and affidavits are attached. The government contends that the search warrants and affidavits provide sufficient probable cause to make the items seized admissible in trial.

The Fourth Amendment requires that a neutral and detached magistrate make a determination whether law-enforcement officers have probable cause to conduct a search. Warden v. Hayden, 387 U.S. 294, 301–02. (1967). Probable cause is the level of suspicion required to justify certain governmental intrusions upon interests protected by the Fourth Amendment. Wong Sun v. United States, 371 U.S. 471, 479 (1963). The determination of probable cause is made by a "totality of the circumstances" review. Illinois v. Gates, 462 U.S. 213, 238 (1983). In the context of a search, probable cause is defined as a "fair probability that the contraband or evidence of a crime will be found in a particular place." Id. The reviewing magistrate is to consider the facts in a practical common sense manner. The evidence must provide the magistrate with a "substantial basis" for his findings. Gates, 462 U.S. at 238–39.

At the hearing into this matter, the government will present evidence which will show that the evidence was seized pursuant to a valid search warrant, as well as proof on any other matter requiring evidence.

E.    **Motion to Suppress Vehicle Searches [Doc #136]**

On September 12, 2012, during the arrest of Cedric Miller, law enforcement officers seized $1,000 in U.S. currency from Cedric Miller's person. Law-enforcement officers making a valid custodial arrest are entitled to conduct a warrantless search of the suspect as well as the area from within which the suspect might obtain a weapon or destroy evidence. Chimel v. California, 395 U.S. 752 (1969). At the hearing into this matter, the government will present evidence which will show that the evidence was seized pursuant to a lawful arrest, as well as proof on any other matter requiring evidence.

On September 12, 2012, a search was conducted of Mark Wells' vehicle, pursuant to a consent to search made by Mark Wells. Mark Wells was able to give this consent because he owned the vehicle.

A search based upon consent may be undertaken by law-enforcement officers without a warrant or probable cause and any evidence discovered during the scope of the search may be seized and admitted at trial. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). To determine the voluntariness of the consent the courts will examine the totality of the circumstances surrounding the consent. Bustamonte, 412 U.S. at 227. The consent does not necessarily have to be knowing and intelligent. Bustamonte, 412 U.S. at 241.

Any person with common authority over, or other sufficient relationship to the place or effects being searched can give valid consent. The relationship may be shown by hearsay. United States v. Matlock, 415 U.S. 164 (1974). A warrantless search is valid when law enforcement officers rely on a person's apparent authority to consent to the search if the reliance is in good faith and reasonably based on all the facts known by the police at the time of the search. Illinois

v. Rodriguez, 497 U.S. 177 (1990). At the hearing into this matter, the government will present evidence which will show that the evidence was seized pursuant to a valid consent search, as well as proof on any other matter requiring evidence.

The defendant, Cedric Miller, has sought to challenge the search of Mark Well's vehicle. The government contends that this defendant does not have the requisite standing to challenge this search. The proponent of a motion to suppress evidence has the burden of establishing that his own Fourth Amendment rights and not those of a third party were violated by the challenged search and seizure. At the evidentiary hearing on the motion to suppress, the defendant bears the burden of producing evidence establishing standing before the Government is required to submit evidence supporting the validity of a search or seizure. Rakas v. Illinois, 439 U.S. 128, 131 (1978).

### F.     Motion to Suppress Identification [Doc #138]

On February 26, 2014 and March 12, 2014, Ronessa Clower viewed photographic array line-ups containing the defendant's photograph. On March 10, 2014 and March 21, 2014, Tresha Townsend viewed photographic array line-ups containing the defendant's photograph. The defendant was not identified during any of these line-ups. The focus of the evidentiary hearing on this motion is whether, under the totality of the circumstances, the identification techniques utilized in the underlying investigation in this case were of such a suggestive nature as to lead to a likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 196 (1972); Simmons v. United States, 390 U.S. 377, 384 (1968). At the hearing into this issue, the government will present evidence which will show that the line-ups were not suggestive, as well as proof on any other matters requiring evidence.

13

A related challenge to the identification testimony is the absence of counsel at the time of the identification. In this case, the identification was made before the initiation of adversarial proceedings. As a result, the defendant was not entitled to counsel at that point. Kirby v. Illinois, 406 U.S. 682, 688–90 (1972). Even if the defendant was entitled to counsel, the identification procedure used here, a photo array, is not a critical stage which requires the presence of counsel. Hill v. Wyrick, 570 F.2d 748, 751 (8th Cir.), cert. denied, 436 U.S. 921 (1978). Further, the evidence will show that the witnesses have independent bases for identification which is untainted by the identification procedure. United States v. Crews, 445 U.S. 463, 472–3 (1980); United States v. Alden, 576 F.2d 772, 778 (8th Cir.), cert. denied, 439 U.S. 855 (1978).

Should this Court feel that the identification procedure used was suggestive, it is not required that this Court suppress all evidence of any out-of-court identification at the above mentioned line-ups or any subsequent identification, including an in-court identification, by Ronessa Clower or Tresha Townsend. An identification derived from unnecessarily suggestive procedures need not be excluded if the totality of the circumstances indicates that the identification is reliable. Mason v. Brathwaite, 432 U.S. 98, 114 (1977).

To assess reliability, the Court should consider: (1) the witness's opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's description of the defendant prior to the identification; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time elapsed between the crime and the confrontation. Biggers, 409 U.S. at 199–200; United States v. Hadley, 671 F.2d 1112, 1115–16 (8th Cir. 1982). When assessing reliability, the court may also consider the weight of other evidence of the defendant's guilt. Graham v. Solem, 728 F.2d 1533, 1546 (8th Cir., 1984).

The Government contends that under the totality of the circumstances, any out-of-court or in-court identification by Ronessa Clower or Tresha Townsend should not be suppressed as any such identification is and will be reliable. At the time of the evidentiary hearing on this matter, the Government will present testimony to substantiate this position.

WHEREFORE, for all the foregoing reasons, the Government respectfully requests defendant Miller's motions be denied.

    Respectfully submitted,

    RICHARD G. CALLAHAN
    United States Attorney

    s/ Dean R. Hoag
    DEAN R. HOAG, #23843MO
    Assistant United States Attorney
    111 South 10th Street, 20th Floor
    St. Louis, Mo 63102
    (314) 539-2200

*Legal Intern William Clark Substantially Assisted in the Preparation of this Response*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

>Rick Sindel
>Attorney at Law
>(Attorney for defendant Miller).

s/ Dean R. Hoag
DEAN R. HOAG, #23483MO
Assistant United States Attorney
